## JOHN F. IDEN, v. STATE OF NEBRASKA.

### FILED JULY 18, 1924. No. 23639.

1. **Criminal Law:** ATTORNEY AND CLIENT. The statute does not prohibit an attorney, acting for a party interested in a civil suit, from afterwards maintaining or prosecuting a criminal action for an offense committed during the trial of the civil suit.

2. ———: EXHIBITS. It is within the discretion of the trial court to allow the jury to take exhibits received in evidence to the jury room.

3. ———: ASSIGNMENTS OF ERROR. It is the duty of counsel who assign errors for review to point out clearly and specifically in what manner and wherein the action of the trial court was erroneous and prejudicial, or the assignment will be disregarded.

4. **Evidence** examined, and *held* to sustain the verdict.

ERROR to the district court for Dawes county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*Allen G. Fisher* and *Holmes, Chambers & Mann,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *George W. Ayres, contra.*

Heard before LETTON, ROSE and DEAN, JJ., BLACKLEDGE and REDICK, District Judges.

LETTON, J.

From a conviction on an information charging perjury, plaintiff in error, hereinafter designated defendant, appeals.

The essential charge of the information is substantially as follows: Defendant did in a matter material to the cause wilfully and feloniously depose, in a certain foreclosure suit against him, that at the time of the execution and delivery of three promissory notes signed by him and described in the information, "a certain clause appearing on the face of said notes and typewritten in green ink reading in substance as follows, to wit, 'This note is given as extension of time on certain note secured by deed of trust

on lands in Dawes Co. Nebr., was not on the said notes at the time he signed the same, and with respect thereto in response to questions propounded to him upon said trial did depose, say and testify as follows, to wit, the following being in substance the questions so propounded and answer so made by the said defendant, to wit, 'Question. You say this typewriting in green, reading as follows,' "This note is given as extension of time on certain note secured by deed of trust on lands in Dawes Co. Nebr.," was not on the notes at the time you signed them? Answer by John F. Iden: No, sir; that was not there. Question. Will you say positively it was not there? Answer by John F. Iden: I say positively it was not there.' Whereas, in truth and in fact, the said clause was on said notes at the time the said John F. Iden signed the said notes as the said John F. Iden then and there well knew, and that said answers and testimony of the said John F. Iden were wilfully, corruptly, unlawfully and feloniously false and untrue, and he the said John F. Iden then and there well knowing that the said matters and testimony so as aforesaid testified to, deposed and declared by him to be true were then and there false and untrue, contrary to the form of the statute," etc.

The errors assigned may be grouped as follows: The county attorney and assistant county attorney were disqualified by reason of pecuniary interests in the result of the suit in the case of Giffen et al. v. Iden et al., out of which the prosecution in this case arose; that the county attorney and his assistant prevented defendant from procuring the testimony of certain witnesses, and from having a timely preparation for such trial, because of the disobedience of the county attorney of the order of the trial court to allow depositions to be taken, made March 26, 1923; that the facts stated in the information are insufficient to constitute an offense; that the verdict is contrary to the law and to the evidence; that the court erred in giving instructions Nos. 3, 5, and 8, and in refusing to give defendant's instructions numbered 1 to 22, inclusive.

The positive and direct testimony of R. F. Poynter, the cashier of the bank named as payee, is to the effect that he

drew up the notes, that he placed the typewriting upon them, and that it was upon the notes at the time they were signed. Other testimony tends to support this. The question whether the typewriting upon the exhibits was written before or after the signatures was also submitted to a number of witnesses testifying as experts that the words were typewritten before the notes were signed.

For the defense defendant went upon the witness-stand and admitted that he was a witness and testified as charged in the information. In justification he said that at the time he was testifying to the best of his recollection and memory as to the fact; that he did not dispute signing the notes; that his intention was to say that he did not remember that when he signed them the typewriting was there; that it was over a year before he gave the testimony when he last had seen the notes. He also testified in the present case: "If that was in there, of course I don't remember seeing it when I signed it;" that after he had been arrested he carefully considered the matter a good many times. "Now, then, after you have carefully and truthfully considered the matter from that time until now, do you have any different positive recollection about them now than you did then? A. Yes; I thought possibly I might have been mistaken on that. Q. That is, it had occurred to you now that you might have been mistaken? Yes, sir. Q. And did you think you were mistaken at that time? A. No; I didn't think I was mistaken, but I possibly might have been mistaken." Mrs. Iden testified that she signed exhibits F and G, two of the notes in controversy, after her husband had signed; that he then doubled the notes up and put them in his pocket, and that was the last she saw them until the time of the trial; that the witness Poynter was not present at that time, and her daughter, Zepha Giffen, was; that the notes were made payable to the Bank of Fortescue. but now the name of the bank is scratched out and they are made payable to R. L. Poynter, and that the green typewriting was not upon the notes at that time. Zepha Giffen testified that two of the notes were signed at the

family home near Bigelow, Missouri; that she saw them at that time; that she read each of the notes over and did not notice any typewriting upon them at that time, and that her recollection is Mr. Poynter's name was not written in the notes when signed, but the name of the Bank of Fortescue appeared as payee. A number of witnesses testified to the good standing of defendant in the community in which he resided, and there was testimony that it is almost impossible to tell merely by inspection whether writing or typewriting has been superimposed. There was sufficient evidence to support the verdict if the jury believed the testimony on behalf of the state, and that the testimony was wilfully and intentionally false and perjured.

There is no basis for the assignment that the county attorney and his assistant were disqualified by reason of having appeared as attorneys for the plaintiff in the foreclosure suit in which the perjury was alleged to have been committed. While the statute forbids a county attorney from being attorney or counsel, "other than for the state or county, in any civil action depending upon the same state of facts upon which any criminal prosecution commenced or prosecuted shall depend," there is no prohibition against an attorney or a party interested in a civil suit from afterwards maintaining or actively prosecuting a criminal action for an offense committed during the trial of the civil suit.

The record does not substantiate the assignment that the county attorney and his assistant prevented defendant from procuring the testimony of witnesses and from having a timely preparation for a fair trial "because of the wilful disobedience of the county attorney of the order of the trial court to allow depositions to be taken, which order was given March 26, 1923." No such order appears in the record and there is absolutely no proof of any acts on the part of the county attorney and his assistant of the nature charged.

It is assigned that the court erred in allowing the jury to take the three notes in controversy to the jury room and

in failing to let the jury examine the exhibits offered in evidence in behalf of the defendant. After the jury had retired to consider, they requested permission of the court to inspect the notes, and this was given. This was within the discretion of the court and was not erroneous.

A general assignment of error is made with respect to a number of instructions, but no error has been pointed out in giving or refusing instructions, either in the oral argument or in the printed brief. It is the duty of counsel who assign errors to point out clearly and specifically in what manner and wherein the action of the court was erroneous and prejudicial, or the assignment will be disregarded. The offered testimony of the witness Hopper was upon an immaterial point. The facts alleged were remote from the issues, and the court did not abuse its discretion in refusing this offer.

Finding no prejudicial error in the record, the judgment of the district court is ·

AFFIRMED.

Note—See District and Prosecuting Attorneys, 18 C. J. p. 1312, sec. 39 (1925 Ann.) ; Criminal Law, 16 C. J. p. 1083, sec. 2543; 17 C. J. p. 181, sec. 3475—Perjury, 30 Cyc. p. 1448.